UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

OWEN F. SHEPHERD,

         Plaintiff,

    -vs-              05-CV-0563C

BUFFALO PSYCHIATRIC CENTER,

         Defendant.

---

  Pending is a motion for summary judgment filed by Michael J. Russo, Assistant New York State Attorney General (Item 42). Defendant has also submitted Declarations of Thomas Dodson, Brenda DiMillo, Gladys Diji, and Patricia Cygan (Items 43-46), a Statement of Facts Supported by the Record (Item 47), and a Memorandum of Law in Support of the Motion (Item 48). In opposition, plaintiff has filed an affidavit (Item 50), and Plaintiff's Statement of Material Facts as to which Plaintiff contends There Exists a Genuine Issue (Item 51), and a Memorandum of Law in Opposition to the Summary Judgment Motion (Item 52). Defendant has filed further Declarations of Gladys Diji, Michael Russo, and Thomas Dodson (Items 63-65, and 68). Defendant has also filed a supplemental memorandum in support of the motion (Item 70).[1]

  The following facts are taken from the affidavits filed by the defendant, the statement of material facts submitted by defendant, and also from allegations made by plaintiff in his complaint, and from other papers.

---

[1] Plaintiff has asked for an opportunity to file a sur-reply. Given the extensive briefing to date, the court finds that a further sur-reply is unnecessary.

In his complaint, plaintiff alleges that he is a qualified individual with a disability under the Americans with Disabilities Act ("ADA"), and that the Buffalo Psychiatric Center ("BPC") discriminated against him on account of a service-connected disability rated at about 30 percent or more, and that this disability was a psychiatric-related disability.

Plaintiff states that on January 18, 2001, defendant appointed plaintiff as a Food Service Worker 1, a part-time position. Plaintiff states that from that time on, he has performed his duties satisfactorily.

On March 31, 2003, Mr. Dodson, who was the Executive Director of the BPC, sent a Notice of Discipline ("NOD") to Mr. Shepherd informing him that a disciplinary proceeding had been instituted against him. In the NOD, Mr. Shepherd was charged with sexual harassment for his continued inappropriate contact with his female co-worker, Ms. Kleinschmidt. This inappropriate contact included unwanted attention, gifts, compliments, invitations, and visits to her home. Plaintiff was also charged with insubordination, because although he had been directed to have no further contact with Ms. Kleinschmidt, he attempted to visit her at her home and at her mother's home, and sent flowers to her mother's home. Such behavior prompted Ms. Kleinschmidt to file a police report with the Kenmore Police Department. Based upon the NOD charges, the BPC assessed plaintiff a penalty of six months' suspension without pay. He was directed to contact his union representative so that a meeting could be arranged with the BPC to discuss the possibility of settling the NOD on a mutually satisfactory basis.

Negotiations were held with plaintiff, his union representative, and the BPC Human Resources Department. He agreed to conditions which limited his contact with Ms. Kleinschmidt, and the BPC agreed that plaintiff's six-month suspension would be held in

abeyance if the conditions of the settlement were met.  Following that, there were other activities which occurred.

On September 5, 2003, a Food Service Worker 2 asked plaintiff to work an extra shift from 10 a.m. to 2 p.m. at the Residential Care Center for Adults, which is a building on the BPC campus.  Prior to coming to work that day, plaintiff made two telephone calls to his supervisor, Ms. Cygan, and left two messages on her voice mail.  In the first message, he stated that he would be coming into work 15 minutes earlier than he was asked to and expected to be paid for the extra time.  He called Ms. Cygan's office again and left a second message, demanding written confirmation of the new amendment concerning his not being in the building after 10 a.m.  Ms. Cygan stated that there were no new stipulations, and he was never forbidden from being in the building after 10 a.m., but rather that he was to avoid contact with Ms. Kleinschmidt, which was established by plaintiff's NOD settlement.

When he came to work on September 5, 2003, Ms. Cygan asked to speak with him in her office.  At the meeting, Ms. Cygan first explained to him that it was not appropriate for him to call his supervisors and leave messages demanding that he be paid extra time.  During the meeting, plaintiff became very agitated, argumentative, interruptive, and insubordinate.  Finally, plaintiff attempted to leave the office.  At that time, Ms. Cygan explained to him that walking out of a meeting with supervisors could be an automatic discipline in the form of a written counseling for insubordination. He continued to be angry and confrontational.  Finally, he left the office, shouting into the hallway.

At that time, Brenda DiMillo, who was employed as a Nutrition Services Administrator 2 at the BPC, heard some commotion outside in the hallway.  Ms. DiMillo left

her office and heard and saw plaintiff yelling outside of Ms. Cygan's office. Plaintiff then continued to the office of Gladys Diji, the Affirmative Action Administrator. She was conducting a meeting with her door closed when plaintiff came into her office and pounded on the door until she opened it. Plaintiff stated that he wanted to talk with her immediately. Ms. Diji tried to explain to him that she was currently busy and had other duties to attend to, but he was too angry and argumentative to understand. He eventually left her office and left the building.

The supervisors reported to Mr. Dodson and explained plaintiff's aforementioned conduct to him. From the reports of the supervisors, it was clear to Mr. Dodson that action must be taken immediately. Because of the information received from plaintiff's supervisors, Mr. Dodson sent a letter to plaintiff, informing him that he was being placed on immediate involuntary leave of absence because his continued presence on the job severely interfered with the operations of the facility and represented a danger to patients and other employees. He was notified that he was required to submit to a medical examination conducted by the Department of Civil Service Employee Health Services to determine his fitness to perform his employment duties.

Plaintiff objected to this procedure, but he submitted to the medical and psychiatric examination conducted by Civil Service. After the examination on November 13, 2003, he returned to work at the BPC as a Food Service Worker 1. Finally, he was promoted to a full-time position as Food Service Worker 1 and currently holds the position of Mental Health Therapy Aide, a position for which he applied and was hired.

To establish a *prima facie* case under the ADA and the Rehabilitation Act, a plaintiff must demonstrate "(1) that he is a 'qualified individual' with a disability; (2) that the

defendants are subject to one of the Acts; and (3) that he was . . . discriminated against by defendants, by reason of [his] disability." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004). Here, plaintiff claims he is a qualified individual with a disability by reason of his Veteran's Administration ("VA") compensation for a "service-connected disability rated at 30 percent or more." (Item 64, Exh. A). A VA disability rating, based on quantifying a decrease in a veteran's earning capacity, has been recognized as a completely different standard than that imposed by the ADA, and the two are not interchangeable. *See Thorn v. BAE Sys. Hawaii Shipyards, Inc.,* 586 F.Supp. 2d 1213, 1222 (D. Haw. 2008). Plaintiff has failed to demonstrate that his alleged impairment "substantially limits one or more of the major life activities. . ." as required by the ADA. 29 C.F.R. § 1630.2(g). Accordingly, he has failed to establish that he is a qualified individual with a disability for purposes of the ADA. *See DiCarlo v. Potter,* 358 F.3d 408, 418 (6th Cir. 2004 (VA determination that plaintiff had 20 percent disability was insufficient to demonstrate that plaintiff was substantially limited in his major life activities).

Moreover, from the circumstances in this case, it is clear that the action taken by Mr. Dodson in directing that plaintiff be subjected to a physical and psychiatric examination was not discriminatory. Plaintiff was placed on an involuntary leave of absence pursuant to New York Civil Service Law § 72 because it was determined that his behavior interfered with facility operations and he was a danger to patients and other employees. Thereafter, plaintiff was directed to submit to a medical and psychological examination to determine his fitness to return to work. Defendant has shown that the examinations were job related and consistent with business necessity and thus did not violate the ADA. *See Conroy v. New York State Dep't of Corr. Serv.,* 333 F.3d 88, 98 (2d Cir. 2003); 42 U.S.C. § 12112(d)(4)(A). As already noted, plaintiff was reinstated as a Food Service Worker 1 and

finally promoted to a full-time position as a Food Service Worker 1 and then as a Mental Health Aide.

Therefore, summary judgment is awarded to defendant on this claim. All claims being dismissed, the Clerk shall enter judgment in favor of defendant dismissing the complaint in its entirety.

So ordered.

\s\ John T. Curtin<br>JOHN T. CURTIN<br>United States District Judge

Dated: December 10, 2009
p:\opinions\05-563.oct2009